Slip Op. 12-4

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HOME PRODUCTS INTERNATIONAL, INC., | |
| Plaintiff, | Before: Leo M. Gordon, Judge |
| v. | Consol. Court No. 11-00104 |
| UNITED STATES, | |
| Defendant. | |

**OPINION and ORDER**

[Administrative review results remanded.]

Dated: January 6, 2012

Frederick L. Ikenson, Peggy A. Clarke, Larry Hampel, Blank Rome LLP, of Washington, DC for Plaintiff Home Products International, Inc.

Carrie A. Dunsmore, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C. for defendant. With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director and Patricia M. McCarthy, Assistant Director. Of Counsel on brief was Thomas M. Beline, Office of the Chief Counsel for Import Administration, International Department of Commerce of Washington, D.C. for Defendant United States.

William E. Perry, Emily Lawson, Dorsey & Whitney LLP, of Seattle WA, for Defendant-Intervenor Since Hardware (Guangzhou) Co., Ltd.

Gordon, Judge: This consolidated action involves an administrative review conducted by the U.S. Department of Commerce ("Commerce") of the antidumping duty order covering Floor-Standing, Metal-Top Ironing Tables from China. See Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China, 76 Fed. Reg. 15,295 (Dep't of Commerce Mar. 21, 2011) (final

results admin. review) ("Final Results"); see also Issues and Decision Memorandum for Ironing Tables from China, A-570-888 (Mar. 20, 2011), available at http://ia.ita.doc.gov/frn/summary/PRC/2011-6560-1.pdf (last visited Jan. 6, 2012) ("Decision Memorandum"). Before the court are motions for judgment on the agency record filed by Home Products International, Inc. ("HPI") and Since Hardware (Guangzhou) Co., Ltd. ("Since Hardware"). The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006),[1] and 28 U.S.C. § 1581(c) (2006).

HPI challenges Commerce's determination to use the market economy purchase price for Since Hardware's cartons. Since Hardware challenges Commerce's (1) selection of a financial statement for use in the surrogate financial ratio, and (2) surrogate value determination for labor.[2] For the reasons set forth below, the court remands the Final Results to Commerce to address certain aspects of its surrogate value determination for labor.

## I. Standard of Review

For administrative reviews of antidumping duty orders, the court sustains Commerce's determinations, findings, or conclusions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition.

[2] Since Hardware also challenged Commerce's surrogate value determination for brokerage and handling, which the court decided on procedural grounds in a prior order.

is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Dupont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d. ed. 2011). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." Edward D. Re, Bernard J. Babb, and Susan M. Koplin, 8 West's Fed. Forms, National Courts § 13342 (2d ed. 2011).

Separately, the two-step framework provided in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute. Dupont, 407 F.3d 1211, 1215; Agro Dutch Indus. Ltd. v. United States, 508 F.3d 1024, 1030 (Fed. Cir. 2007). "[S]tatutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under Chevron." Pesquera Mares Australes Ltda. v.

United States, 266 F.3d 1372, 1382 (Fed. Cir. 2001); see also Wheatland Tube Co. v. United States, 495 F.3d 1355, 1359 (Fed. Cir. 2007) ("[W]e determine whether Commerce's statutory interpretation is entitled to deference pursuant to Chevron.").

## II. Discussion

### A. Cartons

Although Commerce generally uses data from a surrogate market economy country to value inputs for a respondent operating in a non-market economy, if the respondent purchases an input in sufficient quantity from a market economy, Commerce values those inputs based on the purchase price paid. 19 C.F.R. § 351.408(c)(1). Commerce has adopted a rebuttable presumption that market economy purchase prices are the best available information if the total purchased volume exceeds 33 percent of the total volume of that input's purchases. See Antidumping Methodologies: Market Economy Inputs, Expected Non-Market Economy Wages, Duty Drawback; and Request for Comments, 71 Fed. Reg. 61,716, 61,717-719 (Dep't of Commerce Oct. 19, 2006) ("market economy input methodology").

Applying the market economy input methodology, Commerce determined that Since Hardware purchased more than 33 percent of its cartons from a market economy source, and that the market economy price was the best available information to value cartons. In its administrative case brief HPI contended that Since Hardware's carton input consisted of two inputs, cartons and corrugated paper, and that if separated, the 33 percent threshold would not be met. HPI Case Brief at 11-13, PR 82.[3] In the Final

---

[3] "PR __" refers to a document contained in the public administrative record.

<u>Results</u> Commerce did not share HPI's "inferences and assumptions," <u>Clearon Corp. v. United States</u>, 35 CIT ___, ___, 800 F. Supp. 2d 1355, 1361 (2011), and continued to treat cartons as one input.

In its brief before the court, HPI again contends that Since Hardware's carton input should be divided into two separate factors of production—a cartons factor and a corrugated paper factor. Home Products Br. at 3-4, ECF No. 29. The available record evidence, however, demonstrates that Since Hardware reported the carton input as <u>one</u> factor, Since Hardware treats the input as <u>one</u> factor, and Commerce verified Since Hardware's input as <u>one</u> factor. <u>See</u> Since Hardware Section D Response PR 17; Verification Memorandum, PR 51. The court cannot identify any record evidence that demonstrates that Since Hardware purchased cartons as two inputs (cartons and corrugated paper). For example, Home Products might have included on the administrative record affidavits or invoices from its own experience with cartons, or obtained information from Since Hardware's supplier (as it did for brokerage and handling) demonstrating that the supplier sells cartons as two items, not one. <u>See</u> <u>QVD Food Co. v. United States</u>, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("[T]he burden of creating an adequate record lies with [interested parties] and not with Commerce.") (internal quotation marks and citation omitted). In short, Commerce's finding that Since Hardware's cartons are one factor and not two is reasonable. Commerce's treatment of Since Hardware's cartons input must therefore be sustained.

## B. Surrogate Financial Statements

Since Hardware only filed a rebuttal brief during the administrative proceeding and did not challenge Commerce's selection of surrogate financial statements. See November 17, 2010 Letter from Since Hardware to Commerce, PR 83. In its brief before the court, Since Hardware raises for the first time issues relating to the selection of surrogate financial statements, issues that it could have raised before the agency in its case briefs. Since Hardware has therefore failed to exhaust its administrative remedies. See 28 U.S.C. § 2637(d); Carpenter Tech. Corp. v. United States, 30 CIT 1373, 1374-75, 452 F. Supp. 2d 1344, 1346 (2006) (citing Woodford v. Ngo, 548 U.S. 81, 88-90 (2006)); see also 19 C.F.R. § 351.309(c)(2). Accordingly, Commerce's selection of financial statements is sustained.

## C. Labor Wage Rage

When determining surrogate labor rates, Commerce is required "to utilize, to the extent possible," data from one or more market economy countries that are both economically comparable to the non-market economy at issue, and "significant producers of comparable merchandise." 19 U.S.C. § 1677b(c)(4); Dorbest Ltd. v. United States, 604 F.3d 1363, 1372–73 (Fed. Cir. 2010) (invalidating portion of Commerce's labor regulation, 19 C.F.R. § 351.408(c)(3)). In the Final Results Commerce valued labor using an average, industry-specific wage rate calculated from earning or wage data under Chapter 5B of the International Labor Organization ("ILO") Yearbook on Labor Statistics. See Industry Specific Wage Rate Selection Memorandum, PR 71. Commerce relied on industry-specific labor data from multiple countries that Commerce

determined were economically comparable to China and significant producers of comparable merchandise.  Id.  Commerce, however, did not utilize wage data from the primary surrogate country, India.  Id.

Since Hardware challenges Commerce's valuation of the labor wage rate, arguing that wage data from India is the best available information to value labor.  Since Hardware contends that this result is mandated by 19 U.S.C. § 1677b(c)(4), Dorbest, and Shandong Rongxin Import & Export Co. v. United States, 35 CIT ___, 774 F. Supp. 2d 1307 (2011), as well as Commerce's subsequently announced policy changes for the calculation of labor wage rates in NME proceedings, Antidumping Methodologies in Proceedings Involving Non-Market Economies: Valuing the Factor of Production: Labor, 76 Fed. Reg. 36,092 (June 21, 2011) ("New Labor Wage Rate Policy").

These authorities, however, do not mandate the result that Since Hardware desires.  As the court in Shandong explained: "The Court finds groundless [the] argument that Commerce was obligated to utilize data from a single country to value labor.  This argument is untenable in the face of a statute, agency regulation, and CAFC case law, which all explicitly permit the agency to utilize data from multiple countries."  Shandong, 35 CIT at ___, 774 F. Supp. 2d at 1314.  Commerce may, as a matter of gap-filling discretion, decide to use only one country when valuing labor (an approach it has since adopted in its New Labor Wage Rate Policy), but nothing in the authorities relied upon by Since Hardware mandates that result.

For Since Hardware to obtain the relief it desires, (an order from the court directing Commerce to use only Indian wage data to value labor), the administrative

record must support the conclusion that India, and India alone, is both economically comparable to China and a significant producer of comparable merchandise. Since Hardware, though, never makes that specific argument. Instead, Since Hardware argues that Commerce's use of HTS categories at the six-digit, instead of the 10-digit, level was "overly broad," inflating the measure of exports from countries that Commerce identified as "significant producers." Since Hardware Br. at 7, ECF No. 30. Missing from this argument, however, is any explanation why the measure is "overly broad." One might surmise that Since Hardware is arguing that the six-digit level includes merchandise that is not "comparable" to the subject merchandise, as required by 19 U.S.C. § 1677b(c)(4). That argument, in turn, would implicate an analysis of the meaning of the word "comparable", together with an analysis of the information on the administrative record on the scope of the six and ten-digit HTS categories. For whatever reason though, Since Hardware chose not to fully develop its argument that Commerce's approach was "overly broad," leaving the court to deem the issue waived, and sustain Commerce's use of multiple countries to calculate the surrogate value for the labor wage rate. See MTZ Polyfilms, Ltd v. United States, 33 CIT ___, ___, 659 F. Supp. 2d 1303, 1308-09 (2009); Fujian Lianfu Forestry Co. v. United States, 33 CIT ___, ___, 638 F. Supp. 2d 1325, 1350 (2009); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's

work, create the ossature for the argument, and put flesh on its bones.") (internal citations omitted).

Moving on, Since Hardware does raise one issue from Commerce's labor wage rate determination that merits a remand: Commerce's selection of the industry-specific data from the International Standard Classification of all Economic Activities ("ISIC"). Commerce selected ISIC Revision 3 instead of Revision 2 because it was more contemporaneous, but it does not include data from India (the primary surrogate), which did not report data in Revision 3. See Decision Memorandum at 5. The court in Shandong reviewed an identical issue, providing a detailed explanation of the potential unreasonableness of excluding Indian data from the labor calculus:

> The Court is less sanguine, however, about the reasons Commerce cites for excluding Indian labor data, which was reported under ISIC–Rev.2, from the group of countries ultimately providing the labor rate, all of which reported data under ISIC–Rev.3. While the agency has made clear that it prefers "to use data from a single ISIC revision to ensure consistency of the industry category," the Court finds Commerce's justification for this preference lacking and inconsistent. The Indian wages and earnings data reported to the ILO appears to meet all other criteria identified by the agency, including quality, specificity, and contemporaneity. Indian ILO labor data was reported for a year close to the period of review—2006—and was reported at a more specific 3–digit level of the ISIC than the 2–digit–level data relied on by Commerce. Also, India reported a combined earnings figure for men and women, in accordance with Commerce's preference, and the agency does not dispute that the ISIC–Rev.2 Indian labor data includes the pencil industry. To dismiss such apparently valuable data without further explanation is unjustified. Moreover, refusing to use ISIC–Rev.2 data contradicts what the agency has repeatedly identified as a paramount interest: generating the broadest basket of countries possible to value labor. Commerce has cited the need for a broad basket of countries to justify using less contemporaneous data, *Remand Results* at 28, and to attempt to justify the inclusion of labor data from countries with minuscule amounts of exports, (Def.'s Resp. at 14.). The inconsistency with which Commerce has asserted the need for a broad basket of countries warrants a remand.

>      Commerce has broad discretion to determine which criteria it will use to sort and prioritize the data it uses in making its determination. The Court's role is to ensure that Commerce's sorting and prioritizing decisions are reasonable and consistently applied. In this case, the Court finds that most of Commerce's sorting and prioritizing decisions are well justified, such as the decision to use earnings data if available, and wages data if not, and the choice only to utilize data reported for both sexes. The decision to insist that data be reported under a common ISIC revision, however, is not supported by substantial evidence on the record. On remand, if Commerce still wishes to omit all labor data that a qualifying country reported under ISIC–Rev.2, it must explain why the need for consistency across ISIC revisions predominates over the need for a broad basket of countries to value labor. Alternatively, if Commerce determines that the chief value is to have the broadest feasible basket of countries, Commerce is instructed to review which qualifying countries have reported data under a prior ISIC revision which satisfy the agency's other requirements.

Shandong, 35 CIT at ___, 774 F. Supp. 2d at 1315. This is persuasive. Accordingly, the court will remand this issue to Commerce to address these specific issues, and if necessary, include Indian data in its calculation.

Finally, Since Hardware challenges Commerce's choice of ISIC Classification 28 (metal fabricated products), as opposed to ISIC Classification 36 (manufacture of metal furniture) as one of the proper surrogate value data sources for ironing tables. Commerce carefully explained its choice of ISIC Classification 28 on page 3 of its Industry Specific Wage Rate Selection Memorandum and again in the Decision Memorandum at 5-6. Commerce's choice and its accompanying explanations appear more than reasonable on this administrative record.

Since Hardware favors ISIC Classification 36 (manufacture of metal furniture) on the ground that ISIC Classification 28 (metal fabricated products) may cover items other than ironing tables, but Since Hardware fails to establish that ISIC Classification 36

(manufacture of metal furniture) only covers ironing tables.  Since Hardware also fails to explain why or how this issue adversely affects the surrogate labor value for the subject merchandise.  (For example, do labor rates vary widely among the products covered by ISIC Classification 28? And conversely, are labor rates consistently uniform for the items covered by ISIC Classification 36?).  Also missing from Since Hardware's argument is any consideration of how ISIC Classification 36, when compared to ISIC Classification 28, yields a much more accurate surrogate labor value for ironing tables.

Whatever the merits of ISIC Classification 36 may be (and Since Hardware has not adequately explained what they are), substantial evidence review contemplates that for a given data selection issue, two or more reasonable though inconsistent choices are possible on the same administrative record.  See Catfish Farmers of Am. v. United States, 33 CIT ___, ___, 641 F. Supp. 2d 1362, 1366 (2009) ("The administrative record for an antidumping duty administrative review may support two or more reasonable, though inconsistent, determinations on a given issue.").  See also CITIC Trading Co. v. United States, 27 CIT 356, 366 (2003) ("while the standard of review precludes the court from determining whether [Commerce's] choice of surrogate values was the best available on an absolute scale, the court may determine the reasonableness of Commerce's selection of surrogate prices.").  With this framework in mind, and given an administrative record containing a thorough and reasonable explanation justifying the selection of ISIC Classification 28, the court must conclude that Since Hardware's arguments for an alternative ISIC Classification are without merit.  Commerce's choice of ISIC Classification 28 is therefore sustained.

### III. Conclusion

For the foregoing reasons the court will remand this action to Commerce to reconcile its exclusion of Indian wage data with <u>Shandong</u>.  Accordingly, it is hereby

      **ORDERED** that this action is remanded to Commerce to reconcile its exclusion of Indian labor data with the concerns raised by the court in <u>Shandong</u>; and it is further

      **ORDERED** that Commerce shall file its remand results on or before February 15, 2012; and it is further

      **ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.

                                                                      /s/ Leo M. Gordon
                                                                      Judge Leo M. Gordon

Dated: January 6, 2012
       New York, New York