Slip Op. 12-60

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| HOME PRODUCTS INTERNATIONAL, INC.,<br><br>                 Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br><br>                 Defendant. | Before: Leo M. Gordon, Judge<br><br>Consol. Court No. 11-00104 |

**OPINION and ORDER**

[Remand results sustained; Defendant-Intervenor's motion for reconsideration denied; Plaintiff's motion for reconsideration granted.]

Dated: May 3, 2012

Frederick L. Ikenson, Larry Hampel, Blank Rome LLP, of Washington, DC for Plaintiff Home Products International, Inc.

Carrie A. Dunsmore, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C. for Defendant United States. With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director and Patricia M. McCarthy, Assistant Director. Of counsel on brief was, Rachael W. Nimmo, Office of the Chief Counsel for Import Administration, International Department of Commerce of Washington, D.C. for Defendant United States.

William E. Perry, Emily Lawson, Dorsey & Whitney LLP, of Seattle WA, for Defendant-Intervenor Since Hardware (Guangzhou) Co., Ltd.

Gordon, Judge: This consolidated action involves an administrative review conducted by the U.S. Department of Commerce ("Commerce") of the antidumping duty order covering Floor-Standing, Metal-Top Ironing Tables from China. See Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China, 76 Fed. Reg. 15,295 (Dep't of Commerce Mar. 21, 2011) (final

results admin. review) ("<u>Final Results</u>"); <u>see also</u> Issues and Decision Memorandum for

Ironing Tables from China, A-570-888 (Mar. 14, 2011), available at

http://ia.ita.doc.gov/frn/summary/PRC/2011-6560-1.pdf (last visited May 3, 2012)

("<u>Decision Memorandum</u>").

    Before the court are the Final Results of Redetermination ("<u>Remand Results</u>"),

Mar. 14, 2012, ECF No. 83, filed by Commerce pursuant to <u>Home Products Int'l, Inc. v.</u>

<u>United States</u>, 36 CIT ___, 810 F. Supp. 2d 1373 (Jan. 6, 2012) ("<u>Home Products</u>").

Also before the court are two motions for reconsideration, one filed by Since Hardware

(Guangzhou) Co., Ltd. ("Since Hardware") seeking vacatur of (1) this court's order in

<u>Home Products</u> sustaining Commerce's selection of surrogate financial statements

(because Since Hardware failed to timely file an administrative case brief and exhaust

administrative remedies), <u>Home Products</u>, 36 CIT ___, 810 F. Supp. 2d at 1377, and (2)

this court's order deeming waived Since Hardware's challenge to Commerce's

surrogate value determination for brokerage and handling, Memorandum and Order,

Jan. 3, 2012, ECF No. 62 , as amended Jan. 4, 2012, ECF No. 63 ("Memorandum and

Order").   Home Products International, Inc. ("HPI") filed the other motion and seeks

reconsideration of the court's order in <u>Home Products</u> sustaining Commerce's decision

to value Since Hardware's carton input using market economy prices, <u>Home Products</u>,

36 CIT at ___, 810 F. Supp. 2d at 1376-77.

The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006),[1] and 28 U.S.C. § 1581(c) (2006).   For the reasons set forth below, the Remand Results are sustained, Since Hardware's motion for reconsideration is denied, and HPI's motion for reconsideration is granted.

## I. Remand Results

In the Final Results Commerce calculated the surrogate hourly wage rate using ISIC Revision 3 data from Ecuador, Egypt, Indonesia, Jordan, the Philippines, Peru, Thailand, and the Ukraine.  ISIC Revision 3, however, did not contain data from India, the primary surrogate country.  It was this specific issue—Commerce's decision to use only ISIC Revision 3 data and thereby exclude labor data from the primary surrogate country—that the court remanded to Commerce.  Home Products, 36 CIT at ___, 810 F. Supp. 2d at 1379-80.  In discussing the necessity of a remand, the court noted the persuasiveness of a block-quoted passage from Shandong Rongxin Imp. & Exp. Co. v. United States, 35 CIT ___, ___, 774 F. Supp. 2d 1307, 1315 (2011), which addressed an identical issue and explained the potential unreasonableness of Commerce using only ISIC Revision 3 data and excluding Indian labor data.  The Shandong court remanded the issue to Commerce to "explain why the need for consistency across ISIC revisions predominates over the need for a broad basket of countries to value labor," or "to review which qualifying countries have reported data under a prior ISIC revision

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition.

which satisfy the agency's other requirements." Shandong, 35 CIT at ___, 774 F. Supp. 2d at 1315.   Likewise, here, the court directed Commerce to address the "specific issues" quoted from Shandong, "and if necessary, include Indian data in its calculation." Home Products, 36 CIT at ___, 810 F. Supp. 2d at 1380.

On remand, Commerce included Indian data in its surrogate labor calculation, using data from ISIC Revisions 2 & 3 (Commerce also included labor data from Nicaragua, as well as from the eight countries used in the Final Results).   Remand Results at 3-4.   As a result, Since Hardware's margin changed from 67.37 percent to 66.06 percent.   Id. at 12.   Since Hardware challenges two aspects of the Remand Results: First, that Commerce erred by limiting the remand proceeding to one issue raised in Shandong (ISIC Revision 3 and the exclusion of Indian data); and second, that Commerce should have applied its new labor wage rate policy, Antidumping Methodologies in Proceedings Involving Non–Market Economies: Valuing the Factor of Production: Labor, 76 Fed. Reg. 36,092 (June 21, 2011) ("New Labor Wage Rate Policy").   Neither of these arguments is persuasive.

Since Hardware contends that the Remand Results are in error because Commerce did not address all of the issues raised and addressed by the court in Shandong.   Since Hardware's Comments on Remand Results at 3-5, Consol. Court No. 11-00104, Apr. 4. 2012, ECF No. 90 ("Since Hardware's Comments").   Since Hardware, however, has misread Home Products and the scope of the remand order.   The remand was directed to the limited question of whether Commerce properly excluded labor data from countries that reported under ISIC Revision 2.   Home Products, 36 CIT at ___, 810

F. Supp. 2d at 1379 ("Since Hardware does raise <u>one issue</u> from Commerce's labor wage rate determination that merits a remand: Commerce's selection of the industry-specific data from [ISIC].") (emphasis added).   The court's block quotation from <u>Shandong</u> relates exclusively to the issue of whether Commerce reasonably excluded ISIC Revision 2 data, and addresses no other aspects of Commerce's labor wage rate valuation.  <u>Id.</u>  Commerce therefore was not required to address broader aspects of the labor calculation implicated in <u>Shandong</u>.

Since Hardware also argues that on remand Commerce should have applied its New Labor Wage Rate Policy——a methodology not in effect at the time of the <u>Final Results</u>.  Since Hardware's Comments at 5-8.  Although the court understands Since Hardware's desire to obtain the benefit of this new policy, the court cannot direct Commerce by affirmative injunction to apply that policy retroactively to this proceeding. <u>See, e.g.,</u> <u>Laizou Auto Brake Equip. Co. v. United States</u>, 32 CIT 711, 722 (2008) ("At the time the new methodology is finalized and effective, it becomes the best available information, but until that point, Commerce must be granted some discretion to assess the advantages and disadvantages of applying a work-in-progress methodology in place of an existing one.").  And because the court cannot mandate that Commerce must <u>as a matter of law</u> use only Indian labor data, <u>Home Products</u>, 36 CIT at ___, 810 F. Supp. 2d at 1378, Since Hardware had to establish <u>as a factual matter</u> that "India, and India alone, is both economically comparable to China and a significant producer of comparable merchandise." <u>Id.</u>  That would have entailed an analysis (and presentment to the court) of record information detailing the (1) economic comparability and (2)

production of comparable merchandise, for each country used by Commerce in its labor analysis—demonstrating that India alone was the one, correct choice for labor data. Since Hardware, though, did not attempt that "specific argument." Id.  With that said, the Remand Results are thorough, complete, and resolve any potential unreasonableness in Commerce's utilization of the ISIC data.  The Remand Results must therefore be sustained.

## II. Since Hardware Motion for Reconsideration

Since Hardware has also filed a motion for reconsideration pursuant to USCIT Rule 59 seeking vacatur of (1) this court's order in Home Products sustaining Commerce's selection of surrogate financial statements (because Since Hardware failed to timely file an administrative case brief and exhaust administrative remedies), Home Products, 36 CIT at ___, 810 F. Supp. 2d at 1377, and (2) this court's order deeming waived Since Hardware's challenge to Commerce's surrogate value determination for brokerage and handling, Memorandum and Order, Consol. Court No. 11-00104, Jan. 3, 2012, ECF No. 62.

Disposition of a Rule 59 motion is "within the sound discretion of the court." USEC, Inc. v. United States, 25 CIT 229, 230, 138 F. Supp. 2d 1335, 1336 (2001). Such motions are not granted to permit an unsuccessful party to re-litigate a case, but are granted in order "to address a fundamental or significant flaw in the original proceeding." Id.  To that end, "a court's previous decision will not be disturbed unless it is 'manifestly erroneous.'" Id., 25 CIT at 230, 138 F. Supp. 2d at 1337.

### A. Surrogate Country Financial Statements

Shortly after Since Hardware commenced its action (Court No. 11-00105, consolidated with Court No. 11-00104), HPI filed a motion to dismiss Since Hardware's complaint pursuant to USCIT Rule 12(b)(5).  See HPI Mot. to Dismiss, Court No. 11-00105, May 26, 2011, ECF No. 27  ("HPI Mot. to Dismiss").  Count One of Since Hardware's complaint challenges Commerce's selection and use of financial statements used to derive financial ratios to value overhead, SG&A, and profit.  See Since Hardware Compl. ¶ 12, Court No. 11-00105, Apr. 28, 2011, ECF No. 9 ("Since Hardware Compl.").  In its motion to dismiss, HPI explained that Since Hardware failed to timely file its administrative case brief, which Commerce therefore did not consider in its deliberations.  HPI Mot. to Dismiss at 2 (citing Decision Memorandum at 2, n.1).  HPI further explained that HPI in its administrative case brief did not challenge or even mention Commerce's surrogate financial ratios (for factory overhead, SG&A expenses, and profit), and that Since Hardware therefore said nothing at all on this subject in its rebuttal brief because Since Hardware "had nothing to rebut."  Id. at 3.

HPI then argued that Count One must be dismissed because Since Hardware had failed to raise the issue at the administrative level when it had the opportunity.  Id. at 6-9 ("[Since Hardware] did not file a Case Brief.  Its failure deprived HPI of the opportunity to respond to [Since Hardware's] arguments; it failed to permit the development of a record suitable for administrative review let alone judicial review.  It failed to present an issue for [Commerce] to decide and yet it now urges the Court, in Count One of its Complaint, to conclude that [Commerce's] decision, although not

challenged administratively, should be set aside as being unsupported by substantial evidence or otherwise not in accordance with law."). During a conference call with the parties, the court denied HPI's motion without prejudice because it created an unusual procedural posture for trade actions under 28 U.S.C. § 1581(c) and USCIT Rule 56.2 (which typically do not involve USCIT Rule 12(b)(5) motions). See Order, Court No. 11-00105, June 21, 2011, ECF No. 33. The court then circulated a proposed scheduling order that, among other things, sought to confirm "that [Since Hardware] has appropriately exhausted its administrative remedies by presenting its arguments to the agency in the first instance." See Letter and draft Scheduling Order at 2, Consol. Court No. 11-00104, June 23, 2011, ECF No. 20. Without objection, the court entered the scheduling order. Scheduling Order, Consol. Court No. 11-00104, June 28, 2011, ECF No. 22 ("Scheduling Order").

When Since Hardware filed its opening brief, it disregarded the exhaustion problem, plunging right into the merits of Commerce's financial statement selection. See Since Hardware's Mem. in Supp. of R. 56.2 Mot. 12-16, Aug. 18, 2011, ECF No. 30 ("Since Hardware Br."). Since Hardware committed this omission despite knowing it had an exhaustion problem (carefully detailed in HPI's motion to dismiss), and contrary to the clear direction in the Scheduling Order that Plaintiff have "appropriately exhausted its administrative remedies by presenting its arguments to the agency in the first instance." Scheduling Order at 2. It was not until its reply brief that Since Hardware argued that it had raised the issue with Commerce, Since Hardware Reply Br. at 6, Nov. 17, 2011, ECF No. 51, even though it had not, as HPI explained in its motion

to dismiss.  Since Hardware then suggested that the court "use its discretion and waive

the exhaustion requirement."  <u>Id.</u>  Since Hardware assumed, without citation, that the

court may simply waive Commerce's regulation establishing deadlines for case briefs,

19 C.F.R. § 351.309(c)(2), without first reviewing whether Commerce's enforcement of

its deadlines constitutes an abuse of discretion.

 Needless to say, the court sustained Commerce's financial statement selection:

> Since Hardware only filed a rebuttal brief during the administrative proceeding and did not challenge Commerce's selection of surrogate financial statements.  <u>See</u> November 17, 2010 Letter from Since Hardware to Commerce, PR 83.  In its brief before the court, Since Hardware raises for the first time issues relating to the selection of surrogate financial statements, issues that it could have raised before the agency in its case brief.  Since Hardware has therefore failed to exhaust its administrative remedies.  <u>See</u> 28 U.S.C. § 2637(d); <u>Carpenter Tech. Corp. v. United States</u>, 30 CIT 1373, 1374–75, 452 F. Supp. 2d 1344, 1346 (2006) (citing <u>Woodford v. Ngo</u>, 548 U.S. 81, 88–90 (2006)); <u>see also</u> 19 C.F.R. § 351.309(c)(2).  Accordingly, Commerce's selection of financial statements is sustained.

<u>Home Products</u>, 36 CIT at ___, 810 F. Supp. 2d at 1377.  There is no manifest error in

this ruling.   Since Hardware nevertheless introduces an entirely new argument as

support for its reconsideration request.   Admitting an "administrative mistake" by

counsel that caused the late filing of its case brief, Since Hardware now argues for the

first time that "Commerce . . . abused its discretion in refusing to accept the Case Brief

of Since Hardware."  Since Hardware's Mot. for Reconsideration 3-4, Consol. Court No.

11-00104, Feb. 2, 2012, ECF No. 71.  Defendant observes in response, "With no small

amount of irony, Since Hardware attempts to resuscitate its denial that it failed to

exhaust its administrative remedies by raising yet another argument that it failed to exhaust."  Def.'s Resp. to Since Hardware's Mot. for Reconsideration 2, Consol. Court No. 11-00104, Mar. 3, 2012, ECF No. 81.

During the administrative review Commerce notified interested parties that administrative case briefs were due on November 15, 2010.  See Memorandum from Analyst to File, Nov. 3, 2010, P.R. 80.[2]  Since Hardware failed to meet that deadline. Commerce considered Since Hardware's explanation for its tardiness, was not persuaded, and rejected its submission.  See Letter from Law Firm of Dorsey Whitney to Commerce, Nov. 17, 2010, P.R. 83; Letter from Program Manager/IA to Law Firm of Dorsey Whitney Rejecting Submission, Nov. 22, 2010, P.R. 85.  Before the court Since Hardware did not challenge Commerce's rejection of its untimely-filed case brief.  See Since Hardware Compl., Court No. 11-00105; Since Hardware Br., Consol. Court No. 11-00104, Aug. 18, 2001, ECF No. 30.  Since Hardware waited until after the decision in Home Products to complain about this aspect of the administrative process.  This is too late.  Since Hardware abandoned this claim by not raising it in its complaint and opening brief.  See USCIT R. 8 Practice Comment ("For an action described in 28 U.S.C. § 1581(c), the complaint shall contain: . . . (2) a statement of the issues presented by the action . . . ."); see also USCIT R. 56.2(c).

Since Hardware offers no excuse for its failure to raise this issue in the normal course of the litigation.  Instead, Since Hardware requests reconsideration because of

---

[2] "P.R." refers to a document in the public administrative record.

an "intervening change in the controlling law, . . . ."  Since Hardware Mot. for

Reconsideration at 3, Consol. Court No. 11-00104, Feb. 2, 2012, ECF No. 71 (citing

Grobest & I-Mei Indus. v. United States, 36 CIT ___, ___, 815 F. Supp. 2d 1342, 1364

(Jan. 18, 2012)).  Grobest, however, is not an intervening change in controlling law.

Grobest applied existing law to review Commerce's enforcement of procedural

deadlines for an abuse of discretion.  Grobest, 36 CIT at ___, 815 F. Supp. 2d at 1364-

67.  Like the plaintiff in Grobest, who vigorously and repeatedly contested before

Commerce the rejection of an untimely separate rate certification, and who then before

the court both pled and briefed that same issue, Since Hardware was free to (1)

challenge before Commerce the rejection of its case brief; (2) allege in its complaint that

Commerce committed an abuse of discretion by rejecting Since Hardware's case brief;

and (3) brief that allegation with detailed legal and factual support in its motion for

judgment on the agency record pursuant to USCIT Rule 56.2.  That approach would

have allowed Commerce and HPI to respond, first at the administrative level, to Since

Hardware's arguments (perhaps resolving the issue at that point), and then again before

the court with their own legal and factual arguments.  The court would then have had

ample opportunity to review the record and evaluate Since Hardware's argument, as the

court did in Grobest.  Since Hardware instead chose to abandon the issue, first at the

administrative level, and then again before the court (immediately challenging the merits

of Commerce's financial statement selection).  In so doing Since Hardware disregarded

a basic principle of judicial review of administrative decisions (despite the specific

reminders of that principle provided in HPI's motion to dismiss and the Scheduling Order).

For the foregoing reasons Since Hardware's motion to reconsider this court's order in <u>Home Products</u> sustaining Commerce's selection of surrogate financial statements (because Since Hardware failed to timely file an administrative case brief and exhaust administrative remedies), <u>Home Products</u>, 36 CIT at ___, 810 F. Supp. 2d at 1377, is denied.

## B. Brokerage and Handling

Since Hardware also moves for reconsideration of this court's order deeming waived Since Hardware's challenge to Commerce's surrogate value determination for brokerage and handling ("B&H").  In that order the court had to deem waived Since Hardware's challenge to Commerce's brokerage and handling calculation because it was too cursory to warrant the court's consideration:

> Although Since Hardware challenges Commerce's B&H calculation, it does so in a threadbare manner, without citation to any authority:

> > DOC's B&H calculation is unsupported and is in error.  As HPI recognized in its comment, "there is no direct evidence  as to the packed, cubic volume of product (and corresponding weight)."  Use by DOC of the HPI's weight cannot be supported.  DOC has not established a correlation between the cost for B&H with the decreased shipment weight.  The B&H costs are to be based on the product being shipped.  The surrogate cost utilized by DOC is linked to that surrogate weight shipped, not HPI's constructed weight.  Failure to utilize

> the accompanying surrogate shipped weight
> impermissibly distorts the B&H calculation.

Since Hardware Br. at 11-12.   Missing is any effort at identifying standards against which the court can evaluate the reasonableness of Commerce's B&H calculation (e.g., how Commerce typically calculates B&H in the non-market economy context, etc.).  Since Hardware's "argument" is all the more difficult to countenance because the Scheduling Order specifically cautioned against just such a submission:

> Be advised that the court will not permit plaintiff to shift to the court and the other parties the burden of establishing the ossature for plaintiff's arguments against the standard of review the court applies to resolve them.  Instead, the court will summarily sustain Commerce's action.

Scheduling Order at 4, ECF No. 22.  Rule 56.2(c)(2) requires that briefs "must include the authorities relied on and the conclusions of law deemed warranted by the authorities." USCIT R. 56.2(c)(2).   As Since Hardware has failed to satisfy this basic requirement, and abide by the express instructions of the Scheduling Order, the court deems this issue waived and sustains Commerce's B&H calculation. See MTZ Polyfilms, Ltd. v. United States, 33 CIT ___, ___, 659 F. Supp. 2d 1303, 1308-09 (2009); Fujian Lianfu Forestry Co. v. United States, 33 CIT ___, ___, 638 F. Supp. 2d 1325, 1350 (2009); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (internal citations omitted).

Memorandum and Order 1-3.   In its motion for reconsideration Since Hardware concedes that its argument for brokerage and handling was inadequate, but blames the

page limits contained in the Scheduling Order as the cause.  This apologia rings hollow.

On June 23, 2011, the court sent a letter to the parties with a draft scheduling order.

Letter to Parties, Consol. Court No. 11-00104, June 23, 2011, ECF No. 20.  That letter

asked the parties to confer with one another on "<u>proposed</u> dates and page limits set

forth in the attached draft scheduling order."  <u>Id.</u> (emphasis added).  It also advised the

parties to notify the court's case manager if they had any requested revisions to the

draft scheduling order.  <u>Id.</u>  Since Hardware offered no changes to the <u>proposed</u> page

limits.  The Scheduling Order also contained the following proviso: "3. Page Limits.  If

the parties are unable to brief this matter within the page limits set forth above, they are

encouraged to file a motion for additional time (preferably on consent) rather than for

additional pages."  Scheduling Order at 4.  Since Hardware did not file a motion for

additional time, or a motion for additional pages.

       A separate revelation from a related case also casts serious doubt upon Since

Hardware's "page limits" excuse.  In a case involving the subsequent administrative

review (commenced shortly after this action), the court entered a scheduling order with

<u>no</u> specific page limits.  In that action Since Hardware filed the identical brokerage and

handling argument, verbatim (except for one word).  <u>See</u> Since Hardware Mem. of

Points and Authorities in Supp. of R. 56.2 Mot. at 11, Consol. Court No. 11-00106,

Sept. 8, 2011, ECF No. 42.  Whatever the cause of Since Hardware's inadequate

submission, "page limits" evidently were not it.

There being no manifest error in the court's order deeming Since Hardware's brokerage and handling argument waived, the court must deny Since Hardware's motion for reconsideration.

### III. HPI Motion for Reconsideration

HPI has also filed a motion for reconsideration of the court's order sustaining Commerce's decision to value Since Hardware's carton input using market economy prices, Home Products, 36 CIT at ___, 810 F. Supp. 2d at 1376-77.  In its brief challenging Commerce's determination, HPI noted that Commerce "may have misunderstood [its] argument."  HPI Br. in Support of Mot. for J. on Agency Rec. at 5, Consol. Court No. 11-00104, June 18, 2011, ECF No. 29 ("HPI Br.").  To be candid, the court did not fully grasp HPI's argument either.  The court found Defendant's response more understandable: "Since Hardware reported the carton input as one factor, Since Hardware treats the input as one factor, and Commerce verified Since Hardware's input as one factor."  Def.'s Resp. to Pls.' Mot. for J. on Agency R. at 18-19, Consol. Court No. 11-00104, Oct. 20, 2011, ECF No. 43.  The court, however, misinterpreted Defendant's argument to mean that Since Hardware purchased its cartons as one factor.  This was an important predicate of the court's decision in Home Products.  See Home Products, 36 CIT at ___, 810 F. Supp. 2d at 1376-77 ("the court cannot identify any record evidence that demonstrates that Since Hardware purchased cartons as two inputs (cartons and corrugated paper))."  That predicate, however, is incorrect.  The court now understands that Since Hardware separately purchased cartons and corrugated paper, but accounted for them as one carton input, by piece.  HPI is

therefore correct in its motion that the court "overlooked our argument, or in any event misunderstood it."  HPI Mot. for Reh'g at 3, Consol. Court No. 11-00104, Jan. 9, 2012, ECF No. 65.

Having a somewhat more complete understanding of HPI's argument, the court agrees that this issue needs to be remanded to Commerce for further explanation. What makes this issue challenging is the carton input's two-component nature, cartons <u>and</u> corrugated paper, each with their own prices and weights, each being sourced from market and non-market economy suppliers.  Adding to the complexity is Since Hardware's accounting treatment for the input, resulting in "pieces" of carton (which may be either carton or corrugated paper).  Further complicating matters is the "conversion factor" that Since Hardware applied to calculate the market economy threshold, for which a detailed public explanation is not possible without divulging Since Hardware's confidential business proprietary information.

Although Commerce concluded in the <u>Decision Memorandum</u> that "there is nothing on the record to suggest that Since Hardware's reported conversion factor is unreasonable," <u>Decision Memorandum</u> at 11, HPI appears to raise a legitimate concern that may test the reasonableness of the conversion factor.  HPI questions whether Since Hardware's carton accounting is suitable for Commerce's market economy test, explaining that because a "piece" may have different weights or costs from other "pieces," a "piece" cannot constitute a constant variable to measure the "volume" or "amount" of cartons under Commerce's market economy test.  The upshot is that unless Commerce applies a constant variable when measuring the "volume" or "amount" of

cartons from each of the market and non-market sources, the resulting percentage of market economy purchases may likely be inaccurate (if not altogether meaningless). HPI amplifies this explanation with a representative problem of Since Hardware's input accounting and conversion factor:

> Under Since Hardware's technique . . . if there were a universe of three items—two pieces of ME-originating corrugated paper, each weighing ten grams, and one NME-originating carton weighing 400 grams, Since Hardware would contend that [Commerce's] 33 percent threshold has been met: since each of the three items would have an assigned weight of 140 grams (420/3), the two pieces of ME-originating corrugated paper would constitute 66 percent of all POR purchases, thereby satisfying the Department's 33 percent test.  Indeed, even a single 10-gram piece of ME-originating corrugated paper would suffice to satisfy that test[.]

HPI Br. at 5.

HPI's explanation does seem to test the reasonableness of Since Hardware's conversion factor, and by extension, Commerce's conclusion that Since Hardware satisfied the 33 percent market economy threshold.  The court, though, cannot evaluate the reasonableness of Commerce's decision-making reflected in one conclusory sentence in the <u>Decision Memorandum</u>.  To adequately review this issue, the court needs Commerce to further elucidate its conclusion that Since Hardware's market economy carton purchases do indeed exceed 33 percent of the total volume of Since Hardware's carton purchases during the period of review.  The court will therefore remand this issue to Commerce to provide that explanation.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the <u>Remand Results</u> are sustained; it is further

**ORDERED** that Since Hardware's Motion for Reconsideration, ECF No. 71, is denied; it is further

**ORDERED** that HPI's Motion for Reconsideration, ECF No. 65, is granted, and this action is remanded to Commerce to further explain its conclusion that Since Hardware's market economy carton purchases exceed 33 percent of the total volume of Since Hardware's carton purchases during the period of review; it is further

**ORDERED** that Commerce shall file its remand results on or before June 19, 2012; and it is further

**ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.

                                                                               /s/ Leo M. Gordon
                                                                   Judge Leo M. Gordon

Dated: May 3, 2012
       New York, New York